KNAUTH, NACHOD & KUHNE *et al. v.* UNITED STATES (No. 1032).[1]

PAPER WITH DECORATED SURFACE, NOT LITHOGRAPHED.

The paper of the importation has been subjected to processes by which, after a finished design in colors had been imprinted on it, it was saturated with linseed oil and no varnish or other substance was applied to produce an added surface. This is not a surface-coated paper. It is dutiable as a "paper with the surface decorated or covered with a design, fancy effect, pattern, or character,   *   *   * but not by lithographic process," under paragraph 411, tariff act of 1909.

United States Court of Customs Appeals, February 12, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7393 (T. D. 32829).

[Reversed.]

*Churchill & Marlow* for appellants.

*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of paper intended to be applied to glass windowpanes to give them the appearance of stained glass. It bears the trade name of windowphanie paper.

[1] Reported in T. D. 33199 (24 Treas. Dec., 244).

The article was assessed for duty by the collector under the classification of "papers with coated surface or surfaces not specially provided for * * *, printed," at 5 cents per pound and 20 per cent ad valorem, under paragraph 411 of the tariff act of 1909.

The importers filed their protest against the assessment, claiming the merchandise to be dutiable as "papers * * * with the surface decorated or covered with a design, fancy effect, pattern or character, whether produced in the pulp or otherwise, but not by lithographic process," at 4½ cents per pound; or alternatively under the classification of "all other grease-proof * * * papers not specially provided for * * * by whatever name known," at 2 cents per pound and 10 per cent ad valorem under the same paragraph of the act.

The protest was duly heard upon evidence by the Board of General Appraisers and was overruled, from which decision the importers now appeal.

The following is a copy of those parts of paragraph 411 which are here called into question:

411. Papers with coated surface or surfaces, not specially provided for in this section, five cents per pound; if wholly or partly covered with metal or its solutions (except as hereinafter provided), or with gelatin or flock, or if embossed or printed, five cents per pound and twenty per centum ad valorem; papers, including wrapping paper, with the surface decorated or covered with a design, fancy effect, pattern or character, whether produced in the pulp or otherwise, but not by lithographic process, four and one-half cents per pound; if embossed, or wholly or partly covered with metal or its solutions, or with gelatin or flock, five cents per pound and twenty per centum ad valorem: * * * parchment papers, and grease-proof and imitation parchment papers which have been supercalendered and rendered transparent, or partially so, by whatever name known, two cents per pound and ten per centum ad valorem; all other grease-proof and imitation parchment papers, not specially provided for in this section, by whatever name known, two cents per pound and ten per centum ad valorem; * * * .

It appears from the testimony that the article in question is manufactured in its first condition in Italy. When first made it is a plain white paper which is opaque in character. The paper is then packed in large bales and shipped to Germany, where it is converted into the present article. The process to which the article is there submitted consists of two parts. The paper first goes through a printing press having a number of rollers, each one of which impresses a separate color upon its surface, so that finally a finished design in divers colors is printed upon the article. The paper is then hung upon racks and allowed to dry for about three days, when it is passed through a second machine. The operating parts of this machine consist of two rollers, the lower of which turns in a solution of linseed oil, and saturates the paper with the same. The upper roller tightly presses the paper upon the lower one and thus prevents an excess of oil remaining in it. The article is twice passed through the rollers in order that both sides may be successively presented to the lower roller. The paper is again

suspended upon a rack for several weeks, and this brings the entire process to completion. No varnish or other substance is applied to the article in order to give it an added surface or to serve solely as a polish to the original surface. As a result of the process just described the paper is thoroughly and evenly saturated with the oil and is thereby changed from an opaque to a translucent condition. It is also made proof against both water and grease. When the paper as thus finished is attached to the surface of a windowpane it does not prevent the passage of light, but it produces the stained glass effect for which it is chiefly designed.

As has been stated, the article was assessed by the collector as paper with a coated surface, printed. The importers, upon their part, do not deny that the paper is printed, but they maintain that it has not a coated surface. This presents the real issue in the case, whereby the correctness of the assessment must be determined.

It should be noted that there is no question of commercial designation in the case, and nothing appears in either the testimony or the briefs in the nature of trade usage or history tending to aid in the construction of the respective paragraphs. The record presents the simple question whether or not the article which results from the above-described treatment is a surface-coated paper.

It may be noted, however, that in paragraph 420, act of 1890, the corresponding provision was for "papers known commercially as surface-coated papers." In the tariff act of 1894, as well as the subsequent tariff revisions, the article was directly described as "surface-coated papers."

In Notes on Tariff Revision (531) the following apposite statement appears:

GENERAL INFORMATION.

To meet the requirements of certain kinds of presswork, some *papers* are "*coated*" on one or both sides with china clay or other substance, which gives an exceedingly smooth surface, without the hardness of supercalendered papers. A paper is "calendered" by being passed through a series of rolls, i. e., it is "*ironed.*" When calendered papers are passed through a second series of rolls they are said to be "supercalendered."

Flock is very fine woolen or cotton refuse, especially that from shearing the nap of cloths, used as a coating for paper to give it a velvety or clothlike appearance. The dust of vegetable fiber is used for a similar purpose. These *flock-coated, metal-coated,* and *gelatin-coated papers* are used largely in the manufacture of fancy boxes.

Plain *basic photo papers* are uncoated papers which are designed to be sensitized for use in the manufacture of photographs. Some of these papers are coated with various substances, such as baryta, albumen, gelatin, etc., before they are sensitized; others are sensitized uncoated.

The following definitions are also given as bearing upon the present issue:

Murray's Dictionary:

*Coat.* v. 2. To cover with a surface layer or coating (or with successive layers) of any substance, as paint, tar, tin foil, etc.; also predicated of the substance covering the surface.

Standard Dictionary:

*Coat.* v. t. 1. To cover or spread over with a surface layer, as of paint, tar, etc. 2. To cover with or as with a coat.

Century Dictionary:

*Coat.* n. 8. A thin layer of a substance covering a surface; a coating; as a coat of paint, pitch, or varnish; a coat of tin foil.

*Coat.* v. t. 2. To overspread with a coating or layer of another substance; as, to *coat* something with wax or tin foil.

A consideration of these definitions and of the record leads the court to the conclusion that the paper now in question is not surface coated by the oil with which it is treated. The manufacture of the paper involves the complete saturation of the entire body and substance of the article in order to make it translucent. This condition of translucency is absolutely essential to the use for which the paper is designed. In the absence of the oil the paper would be opaque, and therefore unfitted for use as a covering for window panes. If at the completion of the process any part of the paper should remain untreated by the oil, such part would be an imperfection in the article requiring correction. It can not properly be said that the oil is a surface coating which only incidentally affects the body of the paper; to the contrary, the oil is not designed to be a surface coating at all, but is intended to effect a thorough and even saturation of the article throughout. If the two surfaces of the paper were covered with a film of oil leaving between them a layer of paper free from oil, the entire article would remain opaque, and the essential purpose of the treatment would be defeated. The method whereby the oil is applied to the paper bears some resemblance to the process of printing, because the paper is passed through a set of rollers. But the result reached is simply a saturation of the article such as might less efficiently be accomplished by immersing it in a bath of the same liquid. This fact marks the difference between the process just described and the mere painting of the exterior of an article. In the latter case the purpose would be to reach the surface of the article only, and if the paint found its way beneath the surface that result would be unintentional and would not be an essential part of the process.

These considerations lead the court to conclude that the merchandise at bar has not a coated surface, and therefore is not within the classification adopted by the collector. The protest includes two proposed classifications which aptly describe the importation. The more specific and applicable is that for "papers with the surface decorated or covered with a design, fancy effect, pattern, or character, * * * but not by lithographic process." The duty imposed upon importations so described is 4½ cents per pound.

In accordance with the foregoing statement, the decision of the board is *reversed* and reliquidation is accordingly ordered.