W. W. ERSKINE *v.* UNITED STATES (No. 3768)[1]

---

[1] T. D. 47345.

United States Court of Customs and Patent Appeals, October 29, 1934

*Walden & Webster* (*J. L. Klingaman* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Peter A. Abeles* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument October 4, 1934, by Mr. Klingaman and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court overruling the protest of appellant and sustaining the action of the Collector of Customs in the classification and duty assessment of certain paper, known as stencil paper, imported through the port of New York, while the Tariff Act of 1922 was in effect.

We accept as substantially correct a description of the merchandise, contained in the brief for appellant, as follows:

The stencil paper is made by taking yoshino paper, which is fibrous like cloth, but without a pattern, and subjecting it to a coating solution by dipping same into, floating it on or drawing it through said solution, after which the excess solution is removed or allowed to drain away and the paper dried (R. 65). The solution is composed of cellulose ester, fatty acid and a dye (R. 10). The result produces a paper in which the coating solution rests on and around the fibers of

the paper and completely covers both sides of it. The solution does not penetrate the fibers of the paper because if one fractures the stencil paper and draws the fibers out of the solution the fibers show the original white of the paper.

The Collector of Customs classified the merchandise under the last clause of paragraph 1309 of the Tariff Act of 1922, which reads:

PAR. 1309. * * * paper not specially provided for, 30 per centum ad valorem.

The protest of the importer makes alternative claims, but the claim actually relied upon before the trial court and here is that the merchandise should be classified under that portion of paragraph 1305 of said act which reads:

PAR. 1305. Papers with coated surface or surfaces, not specially provided for, 5 cents per pound and 15 per centum ad valorem * * *.

The merchandise is agreed to be in all respects of the same type and character as that which was involved in the case of *United States* v. *Duratex Stencil Co.*, which arose under the Tariff Act of 1922 and which was decided by this court February 1, 1932, and reported in 19 C. C. P. A. (Customs) 341, T. D. 45499.

In that case, upon the record there presented, this court reversed the judgment of the United States Customs Court and held the merchandise classifiable under paragraph 1309, *supra.* The instant proceeding, therefore, is, in effect a retrial of the issue there presented but upon a different record, which record, appellant insists, should lead to a different conclusion from that there reached, particularly in view of certain authorities which were not brought to the court's attention in the former case.

Our opinion in the *Duratex* case, *supra*, was a comprehensive one in which the testimony was fully reviewed. Also the cases of *American Express Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 459, T. D. 32207, and *Knauth, Nachod & Kuhne et al.* v. *United States*, 4 Ct. Cust. Appls. 11, T. D. 33199 (upon the authority of which cases the trial court had rested its decision), were reviewed and interpreted.

We have very carefully examined the record here, in the light of appellant's contentions, but it is not deemed necessary to detail the evidence in this opinion. It is a much more complete and satisfactory record than that presented in the *Duratex* case, *supra*, but, taken as a whole, it does not in any respect alter our view as to the nature and character of the merchandise, which view was supported by what we deemed to be the great weight of the testimony in the former case. Indeed, we think the testimony here, practically in its entirety, is a confirmation of what we there found to be the intrinsic nature of the merchandise.

Appellant's contentions are (1) that the paper is in fact coated; (2) that the coating is intentional and necessary; (3) that the paper

is not saturated nor impregnated; (4) that the fact that the filling of the interstices and the coating of the surfaces took place in one operation does not take the paper out of the class of coated papers, and (5) that the term "coated", as used in the statute, is a manufacturing term and should be so construed. As a sixth point, it is also urged that in certain decisions of different United States Circuit Courts of Appeals in patent cases it was held such paper to be coated paper; that these opinions of our highest courts of general jurisdiction have great weight, and that they should be followed here.

The solution which is applied in the preparation of the imported paper is frequently referred to in the record as "the dope." The ultimate article which it is sought to obtain is one wherein the individual fibers of the yoshino paper shall be completely surrounded by this "dope." It is urged that the "dope" is not, except in a very limited and incidental manner, absorbed into the fibers themselves, but that it merely fills the interstices between, or around, the fibers, the paper before its treatment being of loose texture and extremely porous.

Because of the fact that the *individual fibers* do not absorb the solution, but remain practically unimpregnated by it, the contention is presented that the *paper itself* may not properly be said to be saturated or impregnated.

We think that this is a refinement not proper to be applied.

Individual fibers of an article are themselves composed of particles less than the fibers. The fiber can be separated into parts, of course, until the ultimate part, or atom, is reached. Since two physical bodies cannot occupy the same space at the same time, it follows that eventually a point must be reached where the atoms which make up a fiber that concededly would be saturated are not, as atoms, themselves actually impregnated. The interstices between the atoms are simply filled with the impregnating material.

If the contention here made were carried to its logical end, and particles considered apart from the article which they compose, we apprehend that it might have been plausibly argued that the window-phanie paper involved in the *Knauth* case, *supra*, was not saturated because its ultimate physical units were not in fact saturated, but merely surrounded with the oil infused into the article as a whole.

But, we are not here dealing with atoms of fibers. We have an article of commerce, known as stencil paper. The pores of the original paper have been purposely filled with a solution. We are unable to discern any sound reason for holding that the article before us is not impregnated with that solution, as the term "impregnate", when used in connection with the process of manufacture here followed, is defined.

The applicable definition of "impregnate", given in Funk & Wagnalls' New Standard Dictionary, is:

\* \* \* To infuse or saturate with another substance; impart the qualities of another substance to, as by infusion or mixture \* \* \*.

The Webster definition is in meaning the same and gives as an illustration, "as, to *impregnate* India rubber with sulphur."

It is argued, however, that even if the article be held to be impregnated or saturated, it is also coated intentionally and necessarily, and that it falls literally within the expression of paragraph 1305, *supra*, "Papers with coated surface or surfaces."

This contention, we think was met squarely, and squarely overruled in this court's opinion in the *Duratex* case, *supra*.

A number of dictionary definitions of "coat" were there quoted, which need not be here repeated, and in our concluding paragraph (except one), we said:

It clearly appears from the record that the so-called coating solution was distributed throughout the yoshino paper, the solution and the paper being mixed, incorporated with each other, and that it performed substantially the same function in the body as it did on the surfaces. This being so, and as there was no additional coating applied to the surface or surfaces, it is not paper with "coated surface or surfaces" within the purview of paragraph 1305. *Knauth, Nachod & Kuhne* v. *United States, supra.*

It must be remembered that the ultimate article which it was desired to produce and which was produced—the article imported—was one with all its fibers, both those lying on its surfaces and those between the surfaces, surrounded by the solution. Naturally and inevitably, of course, the surface fibers have the solution on their outer sides, but, as we view it, the product is one which results not from coating but from impregnation or saturation. A paper merely having its surfaces coated with the solution would not answer the purposes for which the article is intended, and would not be the article.

Counsel for appellant has directed our attention to the case of *Martin & Bechtold* v. *United States*, 18 C. C. P. A. (Customs) 363, T. D. 44615, wherein, "lithographic transfer paper," which was coated and thereafter saturated was held "dutiable as a coated paper." With that fairness so characteristic of counsel he states that the issue here involved was not there presented to this court.

We think an examination of the opinion in that case will sufficiently indicate that it has no application here, under the record before us. Aside from the fact that the issue was not presented, it will be observed that legislative history had great influence upon the conclusion there reached.

In the light of what the record shows the article to be in fact, we do not think that the argument as to "coated" being a manufacturing term is apposite here.

There remains to be considered the effect which should be given to the decisions of the United States Circuit Courts of Appeals, here for the first time brought to this court's attention, wherein in litigation involving questions of patent law, it is said that paper such as this has repeatedly been held to be coated paper. *A. B. Dick Co.* v. *Simplicator Corp. et al.*, 34 F. (2d) 935 (for opinion of United States District Court, see 30 F. (2d) 713); *A. B. Dick Co.* v. *Shallcross Co.*, 42 F. (2d) 169; *Arlac Stencil Corp. et al.* v. *A. B. Dick Co.*, 46 F. (2d) 899, 900.

It is quite true that the papers involved in those cases are consistently referred to as coated papers, but classification under customs law was not there involved and the issues presented did not require of those courts an adjudication such as is here required of this court. It is, of course, no disrespect to those courts of general jurisdiction to hold that those decisions may not properly be invoked to control in this proceeding.

We may add that we do not concur in the contention of appellant that the *Knauth* case, *supra*, was improperly applied by us in the *Duratex* case, *supra*, but, entirely independent of the *Knauth* case, *supra*, and solely upon the record here presented, we think the conclusion here must be the same as that reached in the *Duratex* case, *supra*.

The judgment of the United States Customs Court is *affirmed*.