BEFORE THE SECOND DIVISION, JANUARY 4, 1950

**No. 53862.**—Marr Duplicator Co. et al. *v.* United States, protests 466783–G, etc. (New York).

FORD, Judge:   The protests listed in schedule "A," hereto attached and made a part hereof, present for our determination the question of the proper classification of certain imported paper which was classified by the collector as paper not specially provided for, and duty was accordingly levied thereon at the rate of 30 percent ad valorem under paragraph 1309 of the Tariff Act of 1922 as to those protests falling under that act, and under paragraph 1409 as to those protests which fall under the Tariff Act of 1930.

Plaintiffs claim the merchandise to be properly dutiable at only 5 cents per pound plus 15 percent ad valorem under either paragraph 1305 or 1405 of the respective tariff acts, as papers with coated surface or surfaces, not specially provided for.

The wording and also the rate of duty in the two paragraphs of the respective acts, insofar as here applicable, are the same.

At the trial of these protests, counsel for the plaintiffs offered the testimony of the president of the Marr Duplicating Co.   It appears from the record that this witness was well qualified to testify concerning the facts involved in this case.

A sample of two of the items, and illustrative of the third item of the merchandise in issue, was admitted in evidence and marked exhibit 1, and also a sample illustrating the various stages in the manufacture of the paper, as testified to by the witness, was admitted as illustrative exhibit A.   These two exhibits have been examined and considered by us in connection with the question here presented and the oral testimony adduced.

In his brief filed herein, counsel for the plaintiffs formally abandoned protests 344–K, 4583–K, and 22532–K.   These three protests have been dismissed in a separate decision, and will therefore be given no further consideration herein.

Counsel for the plaintiffs also limited the claims in the protests here under consideration to the merchandise described as item 16 on the Stobbs & Vickery invoices, and to the items designated as "M. O." or "A. F." on any of the other invoices.

The record shows that as to the merchandise designated as "A. F.," a sheet of yoshino paper was pulled over a roller, the lower portion of which was submerged in a solution of wax and softening materials, such as oleic acid, stearic acid, amylstearic acid, and other chemicals; that while only one side of the paper was pulled over this wet roller, the solution thoroughly penetrated the loose texture of the paper, going all the way through to the opposite side, so much so that after

the paper was dried, it was difficult to tell one side from the other. After this was done, the paper was hung up or suspended until thoroughly dry, it being stated by the witness that the wax set almost immediately.

The dried paper, which previously had been thoroughly impregnated with the wax solution, was then coated with a cellulose solution, which solution was also in a liquid form, and was applied in the same manner as the wax solution. However, this cellulose solution did not penetrate the paper due to the fact that the paper was already thoroughly impregnated with the wax solution, this second application of the solution causing the paper, after it was dried, to have a different appearance on the side to which it was applied from the side which had not been subjected to the second application.

The process employed in producing the paper designated by the items "M. O." or No. 16 differed from the process employed in producing "A. F." paper only in the fact that the first solution applied was a nitrocellulose solution instead of a wax solution. In the case of the "M. O." paper, however, the second application was with a nitrocellulose solution containing the same ingredients as the first solution, except that it was thicker and more concentrated.

With reference to illustrative exhibit "A," the record shows that the white portion thereof consists of uncoated yoshino paper, that the next one-fourth inch on the sheet represents the paper after one application of the solution, and that about one-half inch further down represents the paper after the second application of the solution. The record further shows that in each instance the first coat or application of the solution thoroughly penetrated the paper and completely impregnated it with the solution, while the second application of the solution, no matter on which side of the paper it was applied, remained on the surface and could be removed by scraping.

The record also shows that the paper designated as item No. 16 on the Stobbs & Vickery invoices is the same as the merchandise designated on the other invoices as item "M. O."

Upon the record as outlined above, counsel for the plaintiffs, in his brief filed herein, contends that:

The facts in the instant case clearly bring the A. F. and M. O. papers here involved into the category of surface coated papers and are legally indistinguishable from the facts in the *Marr Duplicator Co.* case, C. D. 173. The fact that different ingredients were used in the solutions with which the papers were coated is immaterial. In each case the first coating served to impregnate the paper by penetration. The second coat stayed on the surface of the paper of necessity because the interstices of the paper were already filled by the solids contained in the first coat.

In disposing of the question presented in the *Marr Duplicator Co.* case, *supra*, this court said:

In the instant case the paper in question in the first instance was saturated or impregnated with a solution of gelatin filling all the interstices throughout the fibers of the basic paper, rendering the paper up to that stage an impregnated and not a coated paper within the decisions of this court and the Court of Customs and Patent Appeals. The manifest purpose of the second coating applied after the paper was thoroughly dried was to reach the surface of the article only and to give the paper a more finished appearance, as shown by an examination of the sample admitted in evidence herein as Illustrative Exhibit B. If, as in the case just cited, some of the nitrocellulose had found its way beneath the surface, that result would be unintentional and would not be an essential part of the process, and was not within the design and purpose of the makers of the paper. The evidence clearly shows that where the second coating has been scraped off by means of a knife or safety razor blade, the amount of the nitrocellulose found in the remaining portion of the paper was so infinitesimal that it could well be deemed negligible, and thus may be disregarded in determining the classification of the paper.

With the contention of counsel, as set out above, we are in agreement. The paper in this case consists of yoshino paper to one surface of which was applied, in the first instance, a solution, which solution not only covered the surface, but impregnated the interstices of the fibers of the entire basic paper. After that, the paper was thoroughly dried and there was then applied to it a second solution, which, by reason of the paper and all the interstices thereof being completely filled and impregnated by the application of the first solution, of necessity, remained on the surface of the paper.

In *Knauth, Nachod & Kuhne et al.* v. *United States*, 4 Ct. Cust. Appls. 11, the converse of the instant situation was before our appellate court. After quoting a number of dictionary definitions of "coat," our appellate court disposed of that case in the following language:

A consideration of these definitions and of the record leads the court to the conclusion that the paper now in question is not surface coated by the oil with which it is treated. The manufacture of the paper involves the complete saturation of the entire body and substance of the article in order to make it translucent. This condition of translucency is absolutely essential to the use for which the paper is designed. In the absence of the oil the paper would be opaque, and therefore unfitted for use as a covering for window panes. * * * It cannot properly be said that the oil is a surface coating which only incidentally affects the body of the paper; to the contrary, the oil is not designed to be a surface coating at all, but is intended to effect a thorough and even saturation of the article throughout. * * * The method whereby the oil is applied to the paper bears some resemblance to the process of printing, because the paper is passed through a set of rollers. But the result reached is simply a saturation of the article such as might less efficiently be accomplished by immersing it in a bath of the same liquid. This fact marks the difference between the process just described and the mere painting of the exterior of an article. In the latter case the purpose would be to reach the surface of the article only, and if the paint found its way beneath the surface that result would be unintentional and would not be an essential part of the process.

In disposing of a similar question in the case of *Meirowsky Bros.* v. *United States*, T. D. 35496 (G. A. 7732), Fischer, Judge, speaking for this court, said:

It was held in the *Knauth* case, *supra*, that paper merely saturated with linseed oil and no varnish or other substance applied to produce an added surface, was not a surface-coated paper. Here, however, an examination of the samples in evidence satisfies us that, while both surfaces of the paper are completely covered with a coat of varnish, the latter has not completely saturated or permeated the paper. This fact is made clearly apparent by a close inspection of a tear in the paper.

In our opinion the merchandise consists of coated paper and as such we hold it dutiable under paragraph 324, as assessed.

From a consideration of the record before us, including an examination and inspection of the samples, we are satisfied that the merchandise herein falls squarely within the decision of this court in the *Marr Duplicator Co.* case, *supra*, and we therefore hold the items designated as No. 16 on the Stobbs & Vickery invoices, and the items designated "M. O." or "A. F." on any of the other invoices, whether or not these designations are accompanied by other numerals or letters, to be properly dutiable at the rate of 5 cents per pound, plus 15 percent ad valorem under either paragraph 1305 of the Tariff Act of 1922, or paragraph 1405 of the Tariff Act of 1930, as the case may be, as papers with coated surface or surfaces, not specially provided for, as alleged by the plaintiffs.

To the extent indicated the specified claim in said protests is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.